UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SERVICE EMPLOYEES INTERNATIONAL
UNION LOCAL 3, et al,

      Plaintiffs,

vs.                                     Case No. 04-73571

KNIGHT FACILITIES MANAGEMENT, INC.,        HON. AVERN COHN
et al,

      Defendants.

_____/

**MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

I.  Introduction

This is a labor case.  Plaintiffs, the Service Employees International Union Local 3 (SEIU Local 3), Allen Davenport, Dewey Debolt, Frances Giangrande, and Patricia Pigram (collectively, plaintiffs[1]), sued defendants Knight Facilities Management, Inc. (Knight) and Wayne County Airport Authority (WCAA) claiming violations of state law arising out of an award of a contract between Knight and WCAA for janitorial work at the North Terminal Complex at Detroit Metro Airport.  Plaintiffs brought the following claims: (1) civil conspiracy to violate the competitive bidding requirements under the Public Airport Authority Act, M.C.L. § 259.108, et seq.; (2) third party breach of contract; and (3) tortious interference with a business relationship against Knight.

Before the Court are Knight's and the WCAA's motions to dismiss.  For the

_____

[1]Plaintiffs seek relief on behalf of themselves and all others similarly situated, although no class has been certified.

reasons that follow, the motions will be granted.  Defendants raise several arguments

relating to the viability of plaintiffs' state law claims, however, the Court previously found

plaintiffs' state law claims were preempted.  In any event, plaintiffs have not stated a

viable claim against defendants in any form.

## II.  Background[2]

### A.  The parties

SEIU Local 3 is a labor union and the alleged successor labor organization to

Service Employees International Union Local 79 (SEIU Local 79).

The individual plaintiffs were union members who worked as custodians at the

North Terminal Complex until being laid off in March of 2004.

Knight is a corporation that provides janitorial services.

WCAA is a public body established under state law to operate Metro Airport,

including the power to enter into contracts with professional service contractors.  See

M.C.L. § 259.110, et seq.

### B.  The relationships

Prior to March 2004, a company called Omni provided the janitorial services for

the North Terminal Complex.  SEIU Local 79 represented Omni's custodial employees.

In September 2003, the WCAA issued a Request for Proposals (RFP) in which it

solicited competitive bids for janitorial services at the North Terminal Complex.  The

WCAA received a number of proposals, including bids from Knight and Omni.  The RFP

contained the following provision:

_____

[2]This Background is substantially taken from the Court's Order Denying Plaintiffs'
Motion to Remand entered December 21, 2004.

2

PREVAILING WAGE REQUIREMENT:   This contract has a prevailing wage requirement.  Prevailing wage rates shall be the wages and benefits paid to Service Employees International Union (SEIU) Local 79 members.

In January 2004, the WCAA accepted Knight's proposal.

On January 26, 2004, the WCAA and Knight entered into a contract for janitorial services for the North Terminal Complex.

On April 1, 2004, Knight replaced Omni and began performing janitorial services at the North Terminal Complex.  Knight did not hire any of the individual plaintiffs.

On August 19, 2004, plaintiffs -- a putative class of former custodians who worked at the North Terminal Complex and were members of SEIU Local 3 -- filed suit in Wayne County Circuit Court, essentially claiming that the contract between Knight and the WCAA did not comply with the competitive bidding requirements regarding the prevailing wage rate.

Knight and WCAA removed the case to this court on the grounds that plaintiffs' claims were preempted by section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 and the National Labor Relations Act (NLRA), 29 U.S.C. § 151 because the claims asserted rights derived from a collective bargaining agreement (CBA).

Plaintiffs filed a motion to remand on the grounds that none of its state law claims were preempted.  The Court denied the motion.

Knight and the WCAA then filed the instant motions to dismiss.  In responding to the motions, SEIU Local 3 has agreed to be dismissed from the case.  Thus, only the individuals continue as plaintiffs.

III.  Motion to Dismiss

3

A.  Legal Standard

When analyzing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take a plaintiff's well-pleaded allegations as true.  Miree v. DeKalb County, 433 U.S. 25, 27 n.1 (1977).  "[W]hen an allegation is capable of more than one inference, it must be construed in the plaintiff's favor."  Sinay v. Lawson & Sessions Co., 948 F.2d 1037, 1039-40 (6th Cir. 1991).  "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

Fed. R. Civ. P. 12(c) provides that, "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Judgment may be granted under Rule 12(c) where the movants clearly establish that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law.  Beal v. Missouri Pacific R.R., 312 U.S. 45 (1941); 5 C. Wright & A. Miller, Federal Practice and Procedure (hereinafter Wright & Miller) § 1368, p. 518.  All well-pleaded material allegations of the pleadings of the opposing party must be taken as true, while all contravening assertions in the movants' pleadings are taken as false. Given this standard, the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.  Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 479 F.2d 478 (6th Cir. 1973); 5 Wright & Miller, § 1368, p. 520.

B.  Parties' Arguments

Knight argues that all of the counts of the complaint must be dismissed because as preempted by section 301, they are subject to a six-month statute of limitations. Knight also argues that counts I and II fail to state a claim because (1) Michigan courts

4

do not recognize a cause of action for disappointed bidders, let alone employees of a disappointed bidder, and (2) plaintiffs lack standing. Knight argues that count III fails to state a claim because (1) there is no business relationship between plaintiffs and the WCAA, and (2) the complaint fails to state any impropriety on the part of Knight. Finally, Knight argues that plaintiffs' claims are preempted by the Labor Management Relations Act.

The WCAA argues that count I must be dismissed as preempted and cannot be recast as a section 301 claim. Count I is also barred by governmental immunity. Moreover, the WCAA says that Michigan law does not recognize a cause of action for disappointed bidders and, therefore, plaintiffs lack standing. The WCAA also says that counts II and III do not assert any claims against it.

In response, plaintiffs argue that their claims are not time barred, and that their claims cannot be dismissed as preempted because the Court found federal question jurisdiction. Therefore, plaintiffs say, their claims must be decided by this Court, "based on a finding that plaintiffs' have alleged a violation of a CBA." Plaintiffs also argue that count I is not barred by governmental immunity because state law immunity does not apply to federal claims. Plaintiffs say they have standing because they are not simply asserting rights as disappointed bidders. They also say they satisfy the federal standing requirements. Plaintiffs also argue that defendants are misguided in raising state law defenses to what the Court has determined to be federal claims; thus, defendants' defenses are irrelevant. Plaintiffs also say their claims focus on defendants' violation of the "job guarantee" provision which was part and parcel of the requirement prevailing wage requirement in the RFP.

5

In reply, Knight says that plaintiffs have no authority for the proposition that their claims are immune from an attack on standing and other defenses.  Moreover, by referencing the "job guarantee," plaintiffs have conceded that their claims are completely preempted and that they lack standing.  Knight also argues that even if plaintiffs sought to amend their complaint to add an allegation regarding the "Job guarantee," amendment would be futile because such a guarantee is plainly not part of the prevailing wage rates.  Finally, Knight argues that plaintiffs claims are barred by a six month statute of limitations.

WCAA says that count I must be dismissed as preempted and plaintiffs lack standing.

## C.  Analysis

Plaintiffs make three claims.  In count I, they claim that the WCAA and Knight conspired to violate the competitive bidding requirements under state law because the contract between the WCAA and Knight "does not comply with the prevailing wage provision of competitive bidding requirement."  Compl. at ¶ 47.  Plaintiffs cite M.C.L. § 259.114 as the source of the competitive bidding requirement.  This section provides that the WCAA shall have

> (b) The authority shall establish policies and procedures for hiring professional service contractors.
>
> (c) The authority shall utilize competitive bidding for all purchases and all other contracts unless the board, or, if authorized by the board to approve procurements, the chief executive officer of the authority, determines and details in writing the reason that competitive solicitation of bids or proposals is not appropriate, that procurement by competitive bids is not practicable to efficiently and effectively meet the authority's needs, or that another procurement method is in the public's best interests.

M.C.L. § 259.114 (6)(b), (c).  In count II, they claim that they are third-party

beneficiaries to the contract between the WCAA and Knight and that defendants

breached the contract by not providing "prevailing wages and benefits as defined in the

contract."  Compl. at ¶ 53.  In count III, they claim that Knight tortiously interfered with

their business relationship between SEIU Local 3 and the WCAA.

The Court previously found that plaintiffs' claims were preempted by section 301.

Section 301(a) of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization
representing employees in an industry affecting commerce ... may be brought in
any district court of the United States having jurisdiction of the parties, without
respect to the amount in controversy or without regard to the citizenship of the
parties.

29 U.S.C. § 185(a).  The Court held that their claims involve examination and

interpretation of a collective bargaining agreement.  Plaintiffs' claims are all based on

one claim -- that the contract between the WCAA and Knight is not in compliance with

the "prevailing wage requirement" which is defined in the RFP as "the wages and

benefits paid to SEIU Local 79 members."  Plaintiffs admitted that the prevailing wage

requirement is borrowed from the contract between the SEIU and Omni, which was a

collectively bargained contract.

Despite this ruling, defendants have addressed the viability of plaintiffs' state law

claims.  Such an approach is not understood.  Plaintiffs' claims, as interpreted by the

Court, are for violations of the CBA, specifically, the prevailing wage requirement as

stated in the RFP.  Whether or not plaintiffs can make out such a claim is another

matter.  While plaintiffs argue that the Court cannot dismiss and must decide their claim

7

because the Court found their claims were federally based, this argument, for which they have cited no authority, lacks merit.

The problem that has plagued this case from the beginning is the lack of clarity in what plaintiffs are really claiming.  It has been a moving target.  In fact, in plaintiffs' response brief, for the first time, they make reference to a "job guarantee" provision which they say is part and parcel of the competitive bidding requirement and the contract between Knight and the WCAA.  Plaintiffs then set forth this "job guarantee" provision, with no reference to its source.  Plaintiffs then make the bald statement that "the failure of defendants to abide by the job guarantee provision is what gives rise to plaintiffs' action."  Notably, nowhere in the complaint is there a reference to, or allegation regarding, this "job guarantee" provision.

As defendants point out, the "job guarantee" provision is one part of Article XXII Job Re-Bidding Procedure from Local 79's CBA.  This Article provides in full:

> The following rules shall be observed when the Employer is bidding on or taking over the servicing of an establishment where the Union members are covered by a [CBA] with Local 79, SEIU.
>
> 1.     The Employer shall notify the Union President.
> 2.     The incumbent contractor shall provide the Union President within five (5) calendar days an up-dated list of the names of the employees, daily hours worked, current hourly rate per employee, vacations, sick leave, benefit accruals and seniority date.
> 3,     The Union shall supply such requested information within four (4) business days after step two above to any Union contractor requesting such information.  If incumbent contractors do not provide updated seniority lists the Union will provide to bidding contractors the previous two months of employee check-offs.
> 4.     Any Employer newly awarded a job shall observe all of the existing conditions at the job location for a period of twelve (12) months from the dare of start up and specifically employ all existing employees, not reduce

8

the wages or shift hours of any employee, the number of employees, the total number of man hours worked per day and per week, nor change the starting or quitting time of any employee. The appropriate staffing level will be the staff in place sixty (60) days prior to the bid due date.

Plaintiffs say that Knight's contract with the WCAA included the above provision, particularly referencing section 4, because the prevailing wage requirement was part of the contract. Thus, plaintiffs say that Knight was required to retain plaintiffs at the same wage and benefits and defendants breached the contract by failing to retain plaintiffs at their jobs.

At the hearing on defendants' motion, plaintiffs' counsel described the claims as follows:

> ...the job guarantee provision that is part of the collective bargaining agreement that is referenced is a part of the prevailing wage and benefit requirement.
> ...
> ...the agreement that incorporates the wage and benefits, the prevailing wage and benefit provisions of the SEIU Local 79 contract is ambiguous ... we will be able to show that the job guarantee provision [was part of the contract between the WCAA and Knight].

Transcript of April 27, 2005 hearing at p. 4, 6.

Again, plaintiffs are changing the nature of their claims. Their complaint mentions nothing about this "job guarantee" provision, much less do plaintiffs inform the Court of its source. In short, the complaint does not allege what plaintiffs now argue as the core of their claims. Yet, plaintiffs concede that "if the job guarantee was not part of the contract and the competitive bidding requirements, plaintiffs might not have a viable cause of action."

Both defendants argue that there is no basis for finding that the "job guarantee" provision is part of the RFP and therefore part of the contract between Knight and the WCAA. The Court agrees. The RFP only required:

> PREVAILING WAGE REQUIREMENT:   This contract has a prevailing wage requirement. **Prevailing wage rates shall be the wages and benefits paid to Service Employees International Union (SEIU) Local 79 members.**

(Emphasis added). Assuming this prevailing wage requirement became part of the contract between Knight and the WCAA, it requires, at best, that Knight pays the wages set forth in Knight's Exhibit E -- a pay table for Employee Pay and Benefit Rates.   It simply cannot be reasonably inferred that the definition of "prevailing wages" also included the non-economic provisions in Article XXII Job Re-Bidding Procedures, let alone the section allegedly requiring bidders to hire all of the existing employees at their prior wages. As WCAA points out, plaintiffs ask the Court to find that the definition of "prevailing wages" included any provision which arguably benefits plaintiffs, of which there are several in the CBA between Local 3 and Omni. Had the WCAA intended to require the successful bidder to hire all of Omni's former employees and at their existing pay, it would have stated that requirement in the RFP. In short, the RFP cannot reasonably be read to contain the "job guarantee" provision that plaintiffs now say forms the gravamen of their claims.

Another point defendants raise is plaintiffs' problem with standing. Even if the prevailing wage requirement in the RFP and competitive bidding process was somehow read to include the "job guarantee" requirement, Knight's alleged failure to follow it injures its existing employees, not plaintiffs.

Overall, based on plaintiffs' newly-minted characterization of its claims, they
have simply failed to state a claim upon which relief can be granted.  The Court
declines to address defendants' other arguments relating to plaintiffs' state law claims
or defendants' arguments as to the statute of limitations, however well-taken their
arguments may be.  Rather, suffice it to say that plaintiffs have not made out a viable
claim against defendants based on the complaint before the Court.

## IV.  Conclusion

For the reasons stated above, defendants' motion to dismiss are GRANTED.
Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE.

SO ORDERED.


s/Avern Cohn                          
AVERN COHN
Dated:   May 13, 2005                 UNITED STATES DISTRICT JUDGE
         Detroit, Michigan

11